AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>1 Target Location and 1 Target Vehicle,<br>more fully described in Attachment A. | )<br>)<br>)  Case No. MJ22-539<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
1 Target Location and 1 Target Vehicle, more fully described in Attachment A, incorporated herein by reference

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Sections 841 & 846 | Possession of Controlled Substances with Intent to Distribute, Distribution of Controlled Substances, and Conspiracy to Distribute Controlled Substances. |

The application is based on these facts:

✓   See Affidavit of DEA Special Agent Joseph Cheng, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Joseph Cheng, DEA Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
⊙ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 11/03/2022 _____

_____
*Judge's signature*

City and state:  Bellingham, Washington

Paula McCandlis, United States Magistrate Judge
*Printed name and title*

USAO: 2021R01079

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The areas to be searched includes all areas at that location where the Items to Be Seized, listed in Attachment B, could be found.

For physical locations, this includes all areas within and surrounding the primary residence/location, including all rooms, attics, crawlspaces, basements, storage areas, containers, surrounding grounds, garages, carports, trash areas/containers, outbuilding, patios, balconies, yards, secure locations (such as safes), vehicles located on or in the premises, and any persons located within said property or within the residence/location described below.

For vehicles to be searched, this includes all areas of the vehicle, all compartments, and all containers within that vehicle, whether locked or not.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## Residence

2

3
**Target Location 1 (TL1): 8363 Holly Lane, Maple Falls, Washington:**

4
8363 Holly Lane, Maple Falls, Washington is a single wide mobile home that is gray in

5
color with white trim.  Target Location 1 has a covered landing for the front door which

6
is on the south side of the residence.  No numbers are visible on the exterior of the

7
residence.

8

9

10

11

12

13

14

15

16



17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Vehicle**

**Target Vehicle 8: maroon Nissan Murano bearing temporary registration A5737940**:

According to The Washington Department of Licensing, this temporary registration is for a 2006 Nissan Murano, registered to Alfred Luna at 20331 Sanchez Lance, Burlington, Washington and listed as possibly stolen. **Target Vehicle 8** is currently in the custody of the Whatcom County Sheriff's Department and secured in a Whatcom County Sherriff's Office facility.

**ATTACHMENT B**

**(ITEMS TO BE SEARCHED AND SEIZED)**

This warrant authorizes the government to search for the following evidence, fruits, and/or instrumentalities of Distribution and/or Possession of Controlled Substances with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1), and Conspiracy to Distribute Controlled Substances in violation of Title 21, United States Code, Section 846:

1.     Controlled Substances and controlled substance analogues.

2.     Drug Paraphernalia and Instruments of Drug Trafficking: Items used, or to be used, to store, process, package, use, and/or distribute controlled substances; plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances.

3.     Drug Transaction Records:  Documents such as ledgers, receipts, and notes relating to the acquisition, transportation, and distribution of controlled substances, however stored, including in digital devices.

4.     Customer and Supplier Information:  Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, and maps or directions.

5.     Cash and Financial Records:  Currency and financial records, such as bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, and vehicle documents; records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, and cashier's checks.

6.     Photographs/Video:  Photographs, video tapes, digital cameras, surveillance cameras, and associated hardware/storage devices depicting property occupants, friends and relatives of the property occupants, or suspected buyers or sellers of controlled substances, controlled substances or other contraband, weapons, and assets derived from the distribution of controlled substances.

7.     Weapons, including firearms, magazines, ammunition, and body armor.

8.     Codes:  Evidence of codes used in the distribution of controlled substances, such as passwords, code books, cypher or decryption keys.

ATTACHMENT B
Page 1 of 4
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

9.      Property Records:  Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership, rental, income, expenses, or control of the Target Residence, and similar records of other property owned or rented.

10.      Indicia of occupancy, residency, and/or ownership of assets such as utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, and mortgage statements.

11.      Evidence of storage unit rental or access such as rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, and passwords.

12.      Evidence of Personal Property Ownership:  Registration information, ownership documents, or other evidence of ownership of personal property such as vehicles, vessels, boats, airplanes, jet skis, all-terrain vehicles, RVs, and jewelry; evidence of international or domestic travel, hotel stays, and other evidence of unexplained wealth.

13.      Individual and business financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:

a.      Employment records:  paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, dividends, stock certificates, and compensation to officers.

b.      Savings accounts:  statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.

c.      Checking accounts:  statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.

d.      Loan Accounts:  financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.

e.      Collection account statements and other-related records.

f.      Certificates of deposit:  applications, purchase documents, and statements of accounts.

g.      Credit card accounts:  credit cards, monthly statements, and receipts of use.

h.      Receipts and records related to gambling wins and losses, or any other contest winnings.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

i.      Insurance:  policies, statements, bills, and claim-related documents.

j.      Financial records:  profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made, both business and personal, receipts showing charitable contributions, and income and expense ledgers.

14.    All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

15.    All Western Union and/or Money Gram documents and other financial documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash, including applications, payment records, money orders, and frequent customer cards.

16.    Negotiable instruments, jewelry, precious metals, and financial instruments.

17.    Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency.

18.    Correspondence, papers, records, and any other items showing employment or lack of employment.

19.    Phone books, address books, any papers or documents reflecting names, addresses, telephone numbers, pager numbers, cellular telephone numbers, facsimile, and/or telex numbers, telephone records and bills relating to co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists; telephone answering devices that record telephone conversations and the tapes therein for messages left for or by co-conspirators for the delivery or purchase of controlled substances or laundering of drug proceeds.

20.    Safes and locked storage containers, and the contents thereof which are otherwise described in this document.

21.    Tools that may be used to open hidden compartments in vehicles, such as paint, bonding agents, magnets, or other items that may be used to open/close said compartments.

ATTACHMENT B
Page 3 of 4
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2          22.     Digital computing devices, *e.g.*, desktop and laptop computers and table

devices; digital storage devices, *e.g.,* external hard drives and USB thumb drives, and;

3     optical and magnetic storage media, *e.g.,* Blue Ray discs, DVDs and CDs.

4

5          23.     Pill press machine, encapsulating machine, and other tools or equipment

used to manufacture pills

6

7          24.     Cell Phones and other digital communication devices for evidence, fruits,

and/or instrumentalities of the above-referenced crimes, specifically:

8

9               a.      Assigned number and identifying telephone serial number (ESN,

MIN, IMSI, or IMEI);

10

11              b.      Stored list of recent received, sent, or missed calls;

12              c.      Stored contact information;

13              d.      Stored photographs and videos of narcotics, currency, financial

records (such as deposit slips and other bank records), RVs and other vehicles, firearms

14    or other weapons, evidence of the aforementioned crimes of investigation, and/or that

may show the user of the phone and/or coconspirators, including any embedded GPS

15    data associated with these photographs; and

16

17              e.      Stored text messages that are evidence of the above-listed federal

crimes or that may identify the user of the seized phones and/or coconspirators,

18    including messages sent via messaging apps, including Wickr, Signal, WhatsApp, and

Telegram, or other similar messaging services where the data is stored on the telephone

19

20

21

22

23

24

25

26

27

28

**AFFIDAVIT OF JOSEPH CHENG**

STATE OF WASHINGTON        )
                           )
COUNTY OF WHATCOM          )

I, Joseph Cheng, being first duly sworn on oath, depose and say:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) and empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 2516.

2.      I am a Special Agent (SA) with the Drug Enforcement Administration (DEA), United States Department of Justice.  I have been so employed since August 2006.  In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including but not limited to, Title 21, United States Code, Sections 841, 843, 846, and 848.  I am currently assigned to the Bellingham Resident Office of the DEA's Seattle Field Division.  My current assignment involves investigations of high-level drug trafficking organizations within the Western Washington area and elsewhere.

3.      I have completed the DEA Basic Agent Training Course as well as other training courses related to gangs and narcotics trafficking.  I have participated in narcotics investigations at both the local and federal level, and I have participated in numerous federal search warrants.  As a result, I have become familiar with methods of operation of drug traffickers and organizations.  As a Special Agent with the DEA, I have the responsibility of working with other federal and state law enforcement officers in investigations of violations of federal and state controlled substance laws, including the investigation of the distribution of controlled substances including fentanyl and its analogues, cocaine, methylenedioxymethamphetamine (MDMA), methamphetamine, heroin, marijuana, and other dangerous drugs.

AFFIDAVIT OF SA CHENG - 1
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

4.      I have interviewed numerous drug dealers, drug users, and knowledgeable confidential informants about the lifestyles, appearances, and habits of drug dealers and users.  I have become familiar with the manner in which narcotics traffickers smuggle, package, transport, store, and distribute narcotics, as well as how they collect and launder drug proceeds.  I am also familiar with the manner in which narcotics traffickers use telephones, cellular telephone technology, internet, pagers, coded communications and slang-filled conversations, false and fictitious identities, and other means to facilitate their illegal activities and mislead law enforcement investigations.  I have had discussions with other law enforcement personnel about the packaging and preparation of narcotics, the methods of illegal narcotics traffickers, and the security measures that narcotics traffickers often employ.  I have examined narcotics customers' supplier lists, pay/owe ledgers maintained by traffickers, and other documentation related to narcotics trafficking.  I have also examined documentation of various methods by which methamphetamine, cocaine, marijuana, heroin, and other illicit drugs are smuggled, transported, and distributed.  I have participated in hundreds of hours of surveillance of narcotics traffickers.  During surveillance, I have personally observed narcotics transactions, counter surveillance techniques, and the ways in which narcotics traffickers conduct clandestine meetings.

5.      I have also participated in investigations that involved the interception of wire communications, including four investigations of large-scale drug trafficking organizations in which I was the case agent and each of which resulted in the conviction of approximately 20 individuals on federal drug-related charges.  In addition to these cases, I have participated in numerous other wiretap investigations in a variety of roles, including by conducting physical surveillance and monitoring intercepted communications.  I have been directly involved in the review and deciphering of intercepted coded conversations between narcotics traffickers that were later corroborated by surveillance or by targets' statements.  Throughout my law

1    enforcement career, I have spoken with, worked with, and gained knowledge from

2    numerous experienced federal, state, and local narcotics officers.

3                                    **PURPOSE OF THIS AFFIDAVIT**

4            6.      I make this affidavit in support of an application for a warrant authorizing

5    the search of the following target locations, target vehicles, and target devices, which

6    are further described below and in Attachment A, for evidence, fruits and

7    instrumentalities of the crimes of Distribution of, and Possession with Intent to

8    Distribute, Controlled Substances (21 U.S.C. § 841(a)) and Conspiracy to Distribute

9    Controlled Substances (21 U.S.C. § 846), as further described in Attachment B:

10           a.      **Target Location 1 (TL1)**: 8363 Holly Lane, Maple Falls,
11   Washington 98266:  **Target Location 1** is a single wide mobile home that is gray in
     color with white trim.  Target Location 1 has a covered landing for the front door which
12   is on the south side of the residence.  No numbers are visible on the exterior of the
13   residence

14           b.      **Target Vehicle 8 (TV8)**: a maroon Nissan Murano bearing paper
     temporary registration A5737940 (hereinafter, "**Target Vehicle 8**").  According to the
15   Washington Department of Licensing, this temporary registration is for a 2006 Nissan
     Murano, registered to Alfred Luna at 20331 Sanchez Lance, Burlingotn, Washington
16   and listed as possibly stolen.  **Target Vehicle 8** is currently in the custody of the
17   Whatcom County Sheriff's Department and secured in a Whatcom County Sherriff's
     Office facility.
18

19           7.      For each of the Target Locations, authority to search extends to all parts

20   of the property, including main structure, garage(s), storage structures, outbuildings,

21   and curtilage, and all vehicles, containers, compartments, or safes located on the

22   property, whether locked or not, where the items described in Attachment B could be

23   found. For each Target Location described as an apartment, authority to search extends

24   to all storage areas associated with the apartment, including on-site storage lockers,

25   garages, and parking stalls.  For each Target Vehicle searched, authority to search

26   extends to all parts of the vehicle and any cases, containers, compartments, or safes

27   located in the vehicle, whether locked or not, where the items described in Attachment

28   B could be found.

1    8.    During the execution of this warrant, to secure the premises, agents may

2    use an unmanned aircraft equipped with a video camera to conduct a cursory visual

3    inspection ("sweep") of those places inside the residence that agents are to search and

4    in which a person might be hiding. The aircraft would provide live images of those

5    places to be searched, including those in the interior of the house. The unmanned

6    aircraft does not have recording capability. Use of this capability promotes civilian and

7    officer safety by providing agents with information about the presence or absence of

8    people and/or weapons in portions of the premises prior to entering those areas

9    themselves.

10                          **SUMMARY OF PROBABLE CAUSE**

11   Summary of Investigation

12    9.    As explained further below, the United States, including the DEA, is

13   conducting a criminal investigation regarding possible violations of Distribution of, and

14   Possession with Intent to Distribute, Controlled Substances, in violation of 21 U.S.C.

15   § 841(a)(1); Conspiracy to Distribute, and to Possess with the Intent to Distribute,

16   Controlled Substances, in violation of 21 U.S.C. §§ 841(a)(1) and 846, in Skagit

17   County, Whatcom County, and elsewhere. During the course of the investigation,

18   investigators initially identified Enoc MARTINEZ LOPEZ as a primary source of

19   supply of cocaine, and subsequently found him also to be a source of supply of

20   fentanyl, methamphetamine, and heroin.  By reviewing data obtained pursuant to state

21   and federal search warrants, investigators have learned that MARTINEZ and his

22   associates use cellular phones and various mobile applications to conduct their drug

23   distribution business. MARTINEZ has communicated about drug sales via the

24   application "Snapchat" and via his cellular provider's Short Message Service (SMS), he

25   has collected money in exchange for drugs via the application "Cash App," and has

26   stored photographs of drugs on his Google account.

27

28

AFFIDAVIT OF SA CHENG - 4
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Arrest of Adam WISNIEWSKI on April 18, 2022

10.     On April 18, 2022, investigators were conducting surveillance of Enoc MARTINEZ at the Silver Reef Casino in Whatcom County.  Investigators observed an individual, later identified as Adam WISNIEWSKI get into MARTINEZ LOPEZ's gray Toyota pickup truck (TV1).  Investigators followed MARTINEZ LOPEZ and WISNIEWSKI to a nearby gas station, where they remained a short amount of time before returning the Silver Reef Casino.  Investigators observed WISNIEWSKI get out of the MARTINEZ LOPEZ's pickup truck (TV1) and MARTINEZ LOPEZ drive away from the area.  A short while later, as WISNIEWSKI was walking away from the Silver Reef Casino, investigators observed WISNIEWSKI discard an object onto the ground. Investigators recovered this object which they determined to be blue pills marked "M30," which they believed to be fentanyl pills.  WISNIEWSKI was then arrested. During a search incident to arrest, investigators recovered approximately 233 gross grams of suspected fentanyl pills, 68.75 gross grams of suspected fentanyl powder, which was purple in color and a firearm amongst other items.  WISNIEWSKI was release after the interview discussed below.

11.     In a post Miranda statement, WISNIEWSKI told investigators that he had met "V" earlier in the day and obtained 1,000 "blues" and a sample of fentanyl powder, which was purple in color.  Based on the investigation to date, investigators know that MARTINEZ LOPEZ goes by "Victor" with some of his drug trafficking associates. Based on training and experience, I know that "blues" is commonly used code for fentanyl pills marked "M30."  As discussed below, MARTINEZ LOPEZ discusses selling purple fentanyl to another individual.

Arrest of Adam WISNIEWSKI on June 23, 2022

12.     On June 23, 2022, Whatcom County Deputies arrested WISNIEWSKI in Whatcom County.  Found in WISNIEWSKI's possession at the time of his arrest was two firearms and approximately 60 gross grams of pills marked "M30," suspected to contain fentanyl.  In the vehicle at time of WISNIEWSKI's arrest was Jessica SWOPE.

AFFIDAVIT OF SA CHENG - 5
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

13.     In a post Miranda statement, WISNIEWSKI provided information about "V" or "Victor" who was a drug supplier.  WISNIEWSKI shows investigators a contact stored in his phone as "Big Dog V" with the phone number 360-982-8719 (**TT10**), which WISNIEWSKI said was for "Victor."  As discussed above, investigators believe "Victor" to be the MARTINEZ LOPEZ and MARTINEZ LOPEZ to be the user of 360-982-8719 (**TT10**).

Search Warrant on Verizon Wireless accounts 360-982-8719 (TT10) and 206-573-2914

14.     On August 12, 2022, US Magistrate Judge Brian A Tsuchida signed a search warrant authorizing the search for records related to Verizon Wireless records related to 360-982-8719 (TARGET TELEPHONE 10 or TT10) and 206-573-2914, both believed to be used by Enoc MARTINEZ LOPEZ.  Investigators subsequently served this warrant on Verizon wireless.  On August 22, 2022, investigators received records from Verizon Wireless.  No SMS content was received for 206-573-2914.  SMS content was received for 360-982-8719 (TT10) and these messages ranged from June 30, 2022 through August 12, 2022, with several multi day gaps in between the records.

15.     According to Verizon Wireless records, 360-982-8719 (TT10) is subscribed to Vic MARTINEZ at 1628 North 26th Street, Mount Vernon, Washington 98273 with an activation date of May 16, 2022.

16.     In summary, the Verizon Wireless records showed that MARTINEZ LOPEZ is communicating with numerous individuals who are involved in drug trafficking with MARTINEZ LOPEZ.  A small sampling of messages are discussed below that illustrate MARTINEZ LOPEZ's drug related conversations.

| | | | |
|---|---|---|---|
| 8/1/2022 19:09 | Incoming | 3606729681 | "Do u have straight fetty powder?  I found it for 9 a zip but I don't want to mess with a middle man bc he's a douche " |
| 8/1/2022 20:55 | Incoming | 3606729681 | "I'll take one. When you coming this way next? " |
| 8/1/2022 20:56 | Outgoing | 3606729681 | "U want the purple one or the white" |

| 8/1/2022 20:57 | Incoming | 3606729681 | "They're both the fent?" |
|---|---|---|---|
| 8/1/2022 21:00 | Outgoing | 3606729681 | "Yup" |

17.     I believe in this conversation, the user of 360-672-9681 (TT14) is trying to obtain fentanyl powder from MARTINEZ LOPEZ and MARTINEZ LOPEZ offers two different types, differentiated by color and price.

| 8/12/2022 22:16 | Incoming | 3609199666 | "How long till you get more girl" |
|---|---|---|---|
| 8/12/2022 22:19 | Outgoing | 3609199666 | "I have more it's just in smokey point I only bought 7zips on me" |
| 8/12/2022 23:39 | Incoming | 3609199666 | "Aww ok" |
| 8/12/2022 23:56 | Outgoing | 3609199666 | "Yup u good tho" |

18.     Based on my training and experience I know that "girl" is commonly used code for cocaine and that "zips" is commonly used code of ounces of drugs.  In this conversation, I believe that user of 360-919-9666 (TT15) is asking MARTINEZ LOPEZ for cocaine and MARTINEZ LOPEZ says that he only has seven ounce of cocaine with him but has more cocaine at a location in Smokey Point.

| 6/30/2022 21:25 | Incoming | 3608731818 | "I need some white and a roll." |
|---|---|---|---|
| 6/30/2022 21:44 | Incoming | 3608731818 | "Let me know bro I can meet u " |
| 6/30/2022 22:13 | Incoming | 3608731818 | "U coming to town tonight?" |
| 7/1/2022 10:34 | Outgoing | 3608731818 | "I can meet today" |

19.     Based on my training and experience I know that "white" is commonly used code for cocaine, in the context of this investigation, possible white fentanyl powder, and that "roll" is commonly used code for 100 pills or tablets.  Additionally, based on the context of this investigation, the pills involved in this investigation are believe to be the "M30" fentanyl pills.  I believe that the user of 360-873-1818 (TT16)

is asking MARTINEZ LOPEZ for cocaine, or fentanyl powder, and 100 fentanyl pills and that MARTINEZ LOPEZ offers to meet the user of 360-873-1818 (TT16) on July 1, 2022.

| 7/30/2022 19:57 | Incoming | 3606031960 | "Hey I want 2 of blue berry's boats and 1 of upper " |
| 7/30/2022 20:20 | Outgoing | 3606031960 | "Ok" |
| 7/30/2022 20:58 | Incoming | 3606031960 | "Where are we meeting at " |
| 7/30/2022 20:59 | Incoming | 3606031960 | "How long " |
| 7/30/2022 21:20 | Outgoing | 3606031960 | "Come to Marysville " |
| 7/30/2022 21:29 | Incoming | 3606031960 | "I was two off sorry" |
| 7/30/2022 21:45 | Incoming | 3606031960 | "Where are we meeting at " |

20.     Based on training and experience, I know that "blue berry" is commonly used code for "m30" pills, typically containing fentanyl, "boat" is commonly used code for 1,000 pills and "upper" is likely code for some sort of stimulant, possibly cocaine or methamphetamine.  In this conversation, investigators believe that MARTINEZ LOPEZ and the user of 360-603-1960 (TT21) ultimately meet for MARTINEZ LOPEZ to provide 2,000 fentanyl pills and 1 unit of some type of drug to the user of 360-603-1960 (TT21).

| 8/10/2022 14:23 | Incoming | 3603033643 | "Hey bud, are you coming to B'ham today?" |
| 8/10/2022 14:25 | Outgoing | 3603033643 | " Yes I am like 5pm I should be there" |
| 8/10/2022 14:36 | Incoming | 3603033643 | "Cool, cool!\nI am looking for two boats, and one coke. " |
| 8/10/2022 14:47 | Outgoing | 3603033643 | "Ok" |
| 8/10/2022 17:59 | Outgoing | 3603033643 | "On my way " |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| 8/10/2022 18:04 | Incoming | 3603033643 | "How long till you're here?\nI want to clear out the house " |
|---|---|---|---|
| 8/10/2022 18:08 | Outgoing | 3603033643 | "40 min" |
| 8/10/2022 18:08 | Outgoing | 3603033643 | "40 to an hour" |

21.     Based on training and experience, I know that "coke" is commonly used terminology for cocaine and, as previously stated above, "boat" is common code for 1000 "M30" fentanyl pills.  Based on these messages investigators believe that MARTINEZ LOPEZ met the user of 360-303-3643 (TT23) to provide them with 2000 "M30" fentanyl pills and one quantity of cocaine.

| 8/1/2022 23:32 | Incoming | 3603255738 | "What up bro, you coming today or tomorrow?" |
|---|---|---|---|
| 8/2/2022 0:01 | Outgoing | 3603255738 | "Tomorrow I am" |
| 8/2/2022 0:01 | Outgoing | 3603255738 | "Yea bro idk what happend on the white" |
| 8/2/2022 0:24 | Incoming | 3603255738 | "Oh yea mine take it as is and do they noticed it the difference. You don't have your usual?" |
| 8/2/2022 0:28 | Incoming | 3603255738 | "\0If you don't have your usual just bring the same for the amount that was shot. I got your $100 too. \nOh and if you can remember to bring dark paint one b" |
| 8/2/2022 0:28 | Incoming | 3603255738 | "\0ucket tomorrow cause I'm out and of force the little once" |
| 8/2/2022 0:28 | Incoming | 3603255738 | "\0ucket tomorrow cause I'm out and of force the little once" |
| 8/2/2022 2:00 | Incoming | 3603255738 | "K. What time you thinking?" |
| 8/2/2022 2:01 | Outgoing | 3603255738 | "Like 6pm ima leave smokey point " |
| 8/2/2022 2:02 | Incoming | 3603255738 | "Lmk before you head this way so I have time to get it ready k" |
| 8/2/2022 2:21 | Outgoing | 3603255738 | "Ok" |
| 8/2/2022 20:04 | Outgoing | 3603255738 | "On my way" |

22.     Based on the investigation to date, MARTINEZ LOPEZ is not known to be a paint salesman.  Based on training and experience I believe that "white paint" is

code for cocaine or white fentanyl powder, discussed in other conversations and that "dark paint" is code for heroin.  In this conversation investigators believe that the user of 360-325-5738 (TT24) is requesting to obtain heroin and possibly cocaine or white powder fentanyl from MARTINEZ LOPEZ and MARTINEZ LOPEZ agreed to meet them.

23.    The above sampling of messages is consistent with the messages MARTINEZ LOPEZ exchanges with other drug traffickers using his 360-982-8719 (TT10) phone.  Based on the messages reviewed by investigators, the arrests of WISNIEWSKI described above, and other aspects of this this investigation, it is believed that MARTINEZ LOPEZ is involved in the distribution of a significant quantity of drugs in the Bellingham, Washington area to multiple individuals.

Stop of Brezeddric Jamerson on September 29, 2022

24.    On September 29, 2022, a vehicle operated by Brezeddric JAMERSON was stopped in Whatcom County Washington.  JAMERSON was identified as the driver of the vehicle and was taken into custody on Washington State charges.  During a search of JAMERSON's person, a bag which contained 7.5 gross grams of a white crystalline substance, suspected to be crystal methamphetamine, was found on his person.  JAMERSON was read his Miranda rights and provided consent to search the car.  During the search, investigators located a bag which contained 6.9 gross grams of blue pills stamped "M30," these pills are known to investigators to frequently contain fentanyl and a cell phone.  JAMERSON told investigators that he was on the way to see Jesse WITTEVEEN.

25.    JAMERSON was not booked into jail and was released pending further investigation.  JAMERSON's cell phone was seized and taken into evidence pending a search warrant.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Search of JAMERSON's Cellphone

26.     On October 3, 2022, a Whatcom County Superior Court Commissioner approved a search warrant to search the contents of the cell phone seized from Brezeddric JAMERSON.  Investigators searched the phone shortly thereafter.

27.     In JAMERSON's phone, investigators located the following text messages between JAMERSON and 360-660-4383, a phone which investigators later identified as likely being used by Jesse WITTEVEEN:

| Date/Time | Sender | Content |
| --- | --- | --- |
| 9/5/22 4:58 AM | JAMERSON | Belli's inn next to slow pitch....room #204 |
| 9/5/22 5:10 AM | JAMERSON | Zeds new number |
| 9/6/22 12:21 PM | JAMERSON | I tried call...hit me back...I'm ready |
| 9/8/22 4:20 PM | JAMERSON | Hit me up bro need to see you |
| 9/8/22 10:25 PM | WITTEVEEN | What's good homie |
| 9/9/22 1:42 AM | WITTEVEEN | Hey push rena blonden on the key pad |
| 9/10/22 10:33 PM | WITTEVEEN | 8363 holly Lane |
| 9/13/22 8:36 PM | WITTEVEEN | Sup |
| 9/13/22 8:40 PM | JAMERSON | What it do bro |
| 9/13/22 8:41 PM | WITTEVEEN | What's up with you |
| 9/13/22 8:41 PM | JAMERSON | I'm fucked up needing some help |
| 9/13/22 8:43 PM | WITTEVEEN | What you mean |
| 9/13/22 8:44 PM | JAMERSON | My money short....$160 to my named |
| 9/13/22 8:44 PM | WITTEVEEN | Dam. |
| 9/13/22 8:44 PM | WITTEVEEN | What happened |
| 9/13/22 8:44 PM | JAMERSON | The casino |

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| 9/13/22 8:44 PM | WITTEVEEN | Stupid |
| 9/13/22 8:44 PM | JAMERSON | The check engine light is on 4sho |
| 9/13/22 11:07 PM | WITTEVEEN | Damn pimp what happened |
| 9/13/22 11:43 PM | JAMERSON | Can a brother get some help |
| 9/13/22 11:44 PM | JAMERSON | I'll get it right back to ya |
| 9/14/22 12:43 AM | WITTEVEEN | I don't have shit till the am |
| 9/16/22 10:42 PM | WITTEVEEN | Where are you at |
| 9/19/22 8:48 AM | WITTEVEEN | Zed call me fool this is jesse |
| 9/19/22 12:02 PM | WITTEVEEN | 8363 holly ln maple falls WA 98266 |
| 9/29/22 6:55 PM | WITTEVEEN | who is this |

28.     During these messages, the user of 360-660-4383 identified themselves as "Jesse."  Additionally, WITTEVEEN provide 8363 Holly Lane, Maple Falls, Washington 98266 (**Target Location 1**) as his location on more than one occasion. Based on training and experience, investigators believe that "can a brother get some help" is coded communications for providing drugs on consignment, or not paying the full price at the time of receiving the drugs and that "I don't have shit till the am" is coded language where WITTEVEEN told JAMERSON that WITTEVEEN will not have drugs until the morning.

29.     On October 11, 2022, a Whatcom County Superior Court Judge approved a search warrant and court order authorizing investigators to obtain location information for WITTEVEEN's 360-660-4383.  Investigators served the warrant and began receiving information shortly thereafter.

Surveillance of Enoc MARTINEZ LOPEZ on October 3, 2022

30.     On October 3, 2022, investigators conducted surveillance on Enoc MARTINEZ LOPEZ and observed him driving his white BMW (WA/CCV6269). Investigators followed MARTINEZ LOPEZ from Mount Vernon Washington toward Maple Falls, Washington.  Investigators then observed MARTINEZ LOPEZ's white

AFFIDAVIT OF SA Cheng - 12
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   BMW parked in the driveway of 8363 Holly Lane, Maple Falls, Washington (**Target**

2   **Location 1**).  MARTINEZ LOPEZ remained at **Target Location 1** for approximately

3   15 minutes before the white BMW was observed driving away.  Shortly after

4   MARTINEZ LOPEZ's white BMW departed **Target Location 1**, investigators

5   observed multiple vehicles come and go from **Target Location 1** while remaining there

6   for a short amount of time.  Based on training and experience, I know that short stay

7   traffic, such as that observed by investigators, is consistent with drug trafficking

8   activities and I believe that MARTINEZ LOPEZ provided drugs to an individual at

9   **Target Location 1**, some of which was redistributed shortly after MARTINEZ LOPEZ

10  departed.

11  November 1, 2022: Surveillance of Enoc MARTINEZ LOPEZ and Jesse WITTEVEEN

12          31.     On November 1, 2022, investigators conducted surveillance on

13  MARTINEZ LOPEZ.  Investigators observed that MARTINEZ LOPEZ was driving his

14  white BMW.  Investigators followed MARTINEZ LOPEZ from his residence in

15  Marysville, Washington to a business parking lot in Marysville, Washington where

16  investigators observed MARTINEZ LOPEZ meet with the occupant of another vehicle

17  for a short period of time.  Based on training and experience, investigators believe that

18  this was a drug transaction conducted by MARTINEZ LOPEZ.  Investigators observed

19  MARTINEZ LOPEZ's white BMW drive away from the parking lot, investigators did

20  not follow the white BMW.  A short while later, investigators observed the white BMW

21  parked in front of 18111 25th Avenue Northeast, Apartment FF105, Marysville,

22  Washington.  Based on this investigation, investigators know that MARTINEZ LOPEZ

23  frequents this address before and after drug transactions.

24          32.     Investigators observed MARTINEZ LOPEZ's white BMW depart the

25  area of Apartment FF105 and drive toward Mount Vernon, Washington.  Investigators

26  followed MARTINEZ LOPEZ's white BMW to several locations in Mount Vernon,

27  Washington before temporarily losing sight of MARTINEZ LOPEZ's white BMW.

28

AFFIDAVIT OF SA Cheng - 13
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

33.     In the afternoon of November 1, 2022, WITTEVEEN's phone was not providing location information.  At approximately 9:05 PM, investigators began receiving information for WITTEVEEN's phone and it was located in the area of **Target Location 1**.

34.     At approximately 10:05 PM, location data for WITTEVEEN's phone indicated that WITTEVEEN had left the area of **Target Location 1**.  Location data for WITTEVEEN's phone later indicated that WITTEVEEN was in the area of Walmart in Mount Vernon Washington.  Investigators search the area parking lots for vehicle know to be used by WITTEVEEN and did not find any.  Investigators observed a maroon Nissan Murano (**Target Vehicle 8**) in the Walmart parking lot and saw a male wearing a flat brimmed hat and female walk over to, get into and start the Nissan Murano (**Target Vehicle 8**).  Investigators then observed a white Honda sedan park next to the Nissan Murano and female get out of the white Honda and get into the rear passenger seat of the Nissan Murano.  At approximately 10:51 PM, investigators observed both vehicles drive out of the parking lot and shortly thereafter observed that location data for WITTEVEN's phone was travelling with the two vehicles.  Investigators observed both vehicle eventually split up and investigators continued to follow to Nissan Murano (**Target Vehicle 8**).

35.     Investigators followed the Nissan Murano (**Target Vehicle 8**) until it parked in the parking lot of an apartment complex in Mount Vernon, Washington.  Investigators relocated MARTINEZ LOPEZ's white BMW in Mount Vernon, Washington and followed it until approximately 11:25 PM, when investigators observed it park at an apartment complex near where the Nissan Murano (**Target Vehicle 8**) parked.  A short time later, investigators observed the Nissan Murano (**Target Vehicle 8**) drive toward MARTINEZ LOPEZ's white BMW.  Investigators then observed the Nissan Murano (**Target Vehicle 8**) parked near MARTINEZ LOPEZ's white BMW.  Investigators saw MARTINEZ LOPEZ standing near the Nissan Murano (**Target Vehicle 8**) near a male who was wearing a flat brim hat.

AFFIDAVIT OF SA CHENG - 14
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        36.     At approximately 11:35 PM, investigators observed MARTINEZ

2   LOPEZ's white BMW drive away from the apartment complex parking lot followed

3   shortly by the Nissan Murano (**Target Vehicle 8**).  Investigators followed the Nissan

4   Murano (**Target Vehicle 8**) to a nearby gas station where investigators observed the

5   white Honda pull in and park near the Nissan Murano (**Target Vehicle 8**).

6   Investigators positively identified the male from the Nissan Murano (**Target Vehicle 8**)

7   as Jesse WITTEVEEN via a booking photograph.   Investigators observed both vehicles

8   drive away from the gas station in tandem.  Investigators followed both vehicles and

9   observed both vehicles stop on the side of the road and reverse direction of travel, drive

10   in a direction opposite their ultimate destination and drive significantly below the

11   posted speed limit.  Based on training and experience, I know that driving in this

12   manner is consistent with conducting counter surveillance attempting to identify law

13   enforcement surveillance units.  The vehicles eventually split up and investigators

14   continued to follow the Nissan Murano (**Target Vehicle 8**) into Sedro Woolley,

15   Washington where it stopped at a gas station.  Investigators observed the Nissan

16   Murano leave the gas station, drive into and stop on the side of the road in a

17   neighborhood.  Investigators lost sight of the Nissan Murano (**Target Vehicle 8**) as it

18   drove north on Highway 9 toward Maple Falls, Washington.  Investigators believe that

19   the Nissan Murano was driving at a high rate of speed as investigators were unable to

20   catch up to the Nissan Murano (**Target Vehicle 8**).

21        37.     According to NCIC, WITTEVEEN has an outstanding Washington

22   Department of Corrections warrant for escape.  Additionally, according to NCIC,

23   WITTEVEEN has felony convictions including Intimidating Witness, Assault, Attempt

24   to Elude, Possession of Stolen Property, Theft, and a Controlled Substance Violation.

25        38.     Sometime later, Whatcom County Deputies located the Nissan Murano

26   (**Target Vehicle 8**) as it drove through Van Zandt, Washington.  The most direct route

27   between Sedro Woolley and Van Zandt is to drive north on Highway 9.  Deputies

28   attempted to stop the Nissan Murano (**Target Vehicle 8**) and it did not stop.  In an

AFFIDAVIT OF SA CHENG - 15
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

attempt to stop the vehicle, deputies successfully deployed spike strips and the vehicle continued to drive for several miles before the vehicle was ultimately stopped.  While deputies were attempting to stop the Nissan Murano (**Target Vehicle 8**), deputies observed a white bag being thrown out of the passenger side window of the vehicle. Deputies recovered a white bag from the approximate location where deputies observed the bag being thrown out of the Nissan Murano (**Target Vehicle 8**) window.  This bag was found to contain approximately 959 gross grams of suspected methamphetamine and 346 gross grams of suspected fentanyl pills. The driver of the vehicle was identified as Jesse WITTEVEEN and the passenger was identified as Jennifer MCCOSKEY. Both WITTEVEEN and MCCOSKEY were booked into Whatcom County jail.  The Nissan Murano (**Target Vehicle 8**) was towed to Whatcom County Sheriff's Office facility and secured pending a search warrant.

39.     Investigators observed that the location data for WITTEVEEN's phone approximately followed the location the Nissan Murano (**Target Vehicle 8**) as investigators were following it.

## KNOWLEDGE BASED ON TRAINING AND EXPERIENCE

40.     Based upon my training and experience, and my discussions with other experienced officers and agents experienced in drug and money laundering investigations, I know the following:

a.     During the execution of search warrants, it is common to find papers, letters, billings, documents, and other writings that show ownership, dominion, and control of vehicles, residences, and/or storage units.

b.     It is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their vehicles, residences, and/or storage units for their ready access and to conceal them from law enforcement.

c.     Narcotics traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation,

AFFIDAVIT OF SA CHENG - 16
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

ordering, sale, and distribution of controlled substances.  Narcotics traffickers commonly "front," that is, provide on consignment, controlled substances to their clients.  These books, records, receipts, notes, and ledgers, commonly known as "pay and owe sheets," are maintained where traffickers have ready access to them.

d.      Traffickers of controlled substances, and those who assist them, maintain and tend to retain accounts or records of their drug trafficking activities, including lists of drug quantities and money owed, telephone records including contact names and numbers, photographs, and similar records of evidentiary value.  These items are generally kept in locations where drug traffickers believe their property is secure and will remain undetected from law enforcement, such as inside their homes and vehicles.  Sometimes, these locations are not their primary residence, but instead used for the purposes of storing and distributing drugs.

e.      Traffickers of controlled substances commonly maintain records reflecting names or nicknames, addresses, vehicles, and/or telephone numbers of their suppliers, customers and associates in the trafficking organization.  Traffickers commonly maintain this information in books or papers as well as in cellular telephones and other electronic devices.  Traffickers often maintain cellular telephones for ready access to their clientele and to maintain their ongoing narcotics business.  Traffickers frequently change their cellular telephone numbers to avoid detection by law enforcement, and it is common for traffickers to use more than one cellular telephone at any one time.

f.      Traffickers maintain evidence of their criminal activity at locations that are convenient to them, including their residences and vehicles.  This evidence often includes more than contraband and paraphernalia and includes financial records, records of property and vehicle ownership, records of property rented, records of storage facilities used to hide drugs or currency, and other documentary evidence relating to commission of, and proceeds from, their crimes.  Narcotics traffickers sometimes take or cause to be taken photographs and/or video recordings of

AFFIDAVIT OF SA CHENG - 17
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

themselves, their associates, their property, and their illegal product, or have photo or video security systems that record images from their homes or property. These individuals usually maintain these photographs and recordings in their possession or at their premises, in a safe place. Such evidence may be kept at a safe location for a long time after the drug deal(s) to which they pertain are completed, if the location remains under the control of the trafficker.

g. Traffickers frequently maintain items necessary for weighing, packaging and cutting drugs for distribution. This paraphernalia often includes, but is not limited to, scales, plastic bags and other packaging materials, sifters, containers, and cutting/diluting agents and items to mask the odor of narcotics. Persons trafficking and using controlled substances frequently sell more than one type of controlled substance at any one time.

h. It is common for drug dealers to also be users of their product, and it is common for drug users to maintain paraphernalia associated with the use of controlled substances, such as syringes, pipes, spoons, containers, straws, and razor blades.

i. Traffickers frequently maintain records, books, notes, ledgers, travel documents, and other papers relating to the transportation and distribution of controlled substances in locations convenient to them, such as their residences and vehicles.

j. Traffickers often maintain weapons, including firearms and ammunition, in secure locations such as their residences and vehicles, in order to protect their drugs and drug proceeds.

k. Traffickers often have false identification documents and identification documents in the names of others. Traffickers very often place assets in names other than their own, or use fictitious names and identification, to avoid detection of these assets by government agencies, while continuing to use these assets and exercise dominion and control over them.

AFFIDAVIT OF SA CHENG - 18
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1          l.      Drug trafficking is a cash business, often involving large amounts

2   of cash at any one time, so drug traffickers often have money counters.

3          m.     A common method that drug traffickers use to distribute drugs is

4   through the use of passenger vehicles.  Similarly, the proceeds of the sales of drugs are

5   sometimes transported back in the same manner.  Vehicles used by drug traffickers are

6   often placed in fictitious or nominee names, and outfitted with concealed compartments

7   where the drugs and drug proceeds can be hidden to lessen the likelihood of

8   interdiction.

9          n.      Persons involved in drug trafficking conceal in their residences caches of

10  drugs, large amounts of currency, financial instructions, precious metals, jewelry, and

11  other items of value and/or proceeds of drug transactions as well as evidence of

12  financial transactions relating to obtaining, transferring, secreting, or the spending of

13  large sums of money made from engaging in narcotics trafficking activities.

14         o.      Unexplained wealth is probative evidence of crimes motivated by

15  greed, in particular, trafficking in controlled substances.

16         p.      Illegal drug trafficking is a continuing activity over months and

17  even years.  Illegal drug traffickers will repeatedly obtain and distribute controlled

18  substances on a somewhat regular basis, much as any distributor of a legitimate

19  commodity would purchase stock for sale, and, similarly, drug traffickers will have an

20  "inventory," which fluctuates in size depending upon various factors, including the

21  demand and supply for the product.  I would expect the trafficker to keep records of

22  their illegal activities for a period of time extending beyond the time during which they

23  actually possesses illegal controlled substances, in order that they can maintain contact

24  with his criminal associates for future drug transactions, and so that they can have

25  records of prior transactions for which, for example, they might still be owed money, or

26  might owe someone else money.  These records are often created in code.

27         q.      Drug trafficking is a cash business, and in order to escape notice

28  from authorities for using unexplained income, or hide excessive cash from illegal

AFFIDAVIT OF SA CHENG - 19
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    activities, traffickers either keep large quantities of cash at home or other secure

2    locations, such as safe deposit boxes, or convert the cash into other valuable assets,

3    such as jewelry, precious metals, monetary instruments, or other negotiable forms of

4    wealth.  Records of such conversions are often stored where a trafficker lives or in other

5    secure locations such as safe deposit boxes.

6             r.    Money launderers often have banking records to include, but not

7    limited to, deposit or withdrawal slips, bank statements, checks, or money orders. These

8    items can be found in residences, vehicles, storage units, cellular phones, digital

9    devices, among other locations. Some of these banking records may not be in their own

10   name. Money launderers often have several accounts documented in some form, or

11   instructions detailing how to handle each respective account.  For example, they may

12   have a list of accounts belonging to several different people with instructions for how

13   much to deposit or withdraw from each and often maintain this information for long

14   periods of time in their residences or safe deposit boxes.

15            s.    Money launderers often have records or evidence related to how

16   the proceeds were spent or concealed and often maintain this information for long

17   periods of time in their residences or safe deposit boxes.  Evidence may include jewelry

18   and/or vehicles, as well as the contents of storage lockers, safe deposit boxes or bank

19   accounts.  The use of bank accounts is a common money movement technique used by

20   drug traffickers to receive payment for narcotics from customers outside of their

21   geographic region.  It is common for a trafficker to use several bank accounts for this

22   purpose simultaneously in an attempt to avoid detection by the financial institutions

23   and/or law enforcement.  The use of multiple accounts, and the commingling of illicit

24   funds with legitimate funds in particular, is often part of the plan to conceal the illegal

25   activity or may be part of the overall integration mechanism by which the illicit funds

26   are made to appear as part of the legitimate income so that only a small portion of or

27   even none of the funds from an account are seized.

28

AFFIDAVIT OF SA CHENG - 20
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

t.      I know from my training and experience that Mexico-based DTOs frequently use various wire-remitter services and multiple senders to transfer money in relatively small increments to multiple recipients.  DTOs employ such tactics in an effort to avoid triggering mandatory financial-reporting requirements of the wire-remitter operators and to avoid law enforcement detection.  I also know from my training and experience that Mexico-based DTOs often use such wire transfers in order to quickly move a small portion of drug proceeds out of the United States and into the possession of DTO operatives and leadership in Mexico, with the bulk of the cash drug proceeds to follow later.

u.      Based on my training and experience, I know that international money transfers among DTO members can be made through various digital money transfer services utilizing internet-connected digital devices such as desktop and laptop computers. In addition, those digital devices can be used by DTO members to access, store, send, and receive records related to such international money transfers. Accordingly, internet-connected digital devices owned or used by DTO members could harbor evidence of money laundering.

41.     Based on my training and experience, and that of other investigators I have talked to, I also know that drug dealers use cellular telephones as a tool or instrumentality in committing their criminal activity, to include laundering their proceeds.  They use them to maintain contact with their suppliers, distributors, and customers.  They prefer cellular telephones because, first, they can be purchased without the location and personal information that land lines require.  Second, they can be easily carried to permit the user maximum flexibility in meeting associates, avoiding police surveillance, and traveling to obtain or distribute drugs.  Third, they can be passed between members of a drug conspiracy to allow substitution when one member leaves the area temporarily.  Since cellular phone use became widespread, every drug dealer I have contacted has used one or more cellular telephones for his or her drug business.  I also know that it is common for drug traffickers to retain in their possession

AFFIDAVIT OF SA CHENG - 21
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  phones that they previously used, but have discontinued actively using, for their drug

2  trafficking business.  These items may be kept for months and months in a safe place

3  controlled by the drug trafficker.  Based on my training and experience, the data

4  maintained in a cellular telephone used by a drug dealer is evidence of a crime or

5  crimes.  This includes the following:

6          a.      The assigned number to the cellular telephone (known as the

7  mobile directory number or MDN), and the identifying telephone serial number

8  (Electronic Serial Number, or ESN), (Mobile Identification Number, or MIN),

9  (International Mobile Subscriber Identity, or IMSI), or (International Mobile Equipment

10  Identity, or IMEI) are important evidence because they reveal the service provider,

11  allow us to obtain subscriber information, and uniquely identify the telephone.  This

12  information can be used to obtain toll records, to identify contacts by this telephone

13  with other cellular telephones used by co-conspirators, to identify other telephones used

14  by the same subscriber or purchased as part of a package, and to confirm if the

15  telephone was contacted by a cooperating source.

16          b.      The stored list of recent received, missed, and sent calls is

17  important evidence.  It identifies telephones recently in contact with the telephone user.

18  This is valuable information in a drug investigation because it will identify telephones

19  used by other members of the organization, such as suppliers, distributors and

20  customers, and it confirms the date and time of contacts.  If the user is under

21  surveillance, it identifies what number he called during or around the time of a drug

22  transaction or surveilled meeting.  Even if a contact involves a telephone user not part

23  of the conspiracy, the information is helpful (and thus is evidence) because it leads to

24  friends and associates of the user who can identify the user, help locate the user, and

25  provide information about the user.  Identifying a defendant's law-abiding friends is

26  often just as useful as identifying his drug-trafficking associates.

27

28

AFFIDAVIT OF SA Cheng - 22
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       c.     Stored text messages are important evidence, similar to stored

2 numbers.  Agents can identify both drug associates, and friends of the user who likely

3 have helpful information about the user, his location, and his activities.

4       d.     Drug traffickers increasingly use applications on smart phones that

5 encrypt communications such as WhatsApp, or applications that automatically delete

6 messages, such as Snapchat, in order to avoid law enforcement monitoring or recording

7 of communications regarding drug trafficking and/or money laundering.  Evidence of

8 the use of such applications can be obtained from smart phones, and is evidence of a

9 smart phone user's efforts to avoid law enforcement detection.

10       e.     Photographs on a cellular telephone are evidence because they help

11 identify the user, either through his or her own picture, or through pictures of friends,

12 family, and associates that can identify the user.  Pictures also identify associates likely

13 to be members of the drug trafficking organization.  Some drug dealers photograph

14 groups of associates, sometimes posing with weapons and showing identifiable gang

15 signs.  Also, digital photos often have embedded "geocode" or GPS information

16 embedded in them.  Geocode information is typically the longitude and latitude where

17 the photo was taken.  Showing where the photo was taken can have evidentiary value.

18 This location information is helpful because, for example, it can show where

19 coconspirators meet, where they travel, and where assets might be located

20       f.     Stored address records are important evidence because they show

21 the user's close associates and family members, and they contain names and nicknames

22 connected to phone numbers that can be used to identify suspects.

23 **CONLCUSION**

24     128.   Based on the information set forth herein, there is probable cause to

25 search **Target Location 1** and **Target Vehicle 8**, as further described in Attachment A,

26 for evidence, fruits and instrumentalities, as further described in Attachment B, of

27 crimes committed by the individuals listed in this affidavit and their coconspirators,

28 specifically distribution of, and possession with intent to distribute, controlled

AFFIDAVIT OF SA CHENG - 23
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  substances, in violation of Title 21, United States Code, Section 841(a)(1); conspiracy

2  to distribute controlled substances, in violation of Title 21, United States Code, Sections

3  841(a)(1) and 846; and/or money laundering and conspiracy to launder money, in

4  violation of Title 18, United States Code Section 1956 and 1956(h).

5

6

7                                      Joseph Cheng
                                       Special Agent
8                                      Drug Enforcement Administration

9

10         The above-named agent provided a sworn statement attesting to the truth of the
                                                    November
11  contents of the foregoing affidavit on the **3rd** day of ~~Xxxxxxx~~, 2022.

12

13

14                                     PAULA L. McCANDLIS
                                       United States Magistrate Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF SA CHENG - 24
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**ATTACHMENT A**

2

**PROPERTY TO BE SEARCHED**

3

4

The areas to be searched includes all areas at that location where the Items to Be

5

Seized, listed in Attachment B, could be found.

6

For physical locations, this includes all areas within and surrounding the primary

7

residence/location, including all rooms, attics, crawlspaces, basements, storage areas,

8

containers, surrounding grounds, garages, carports, trash areas/containers, outbuilding,

9

patios, balconies, yards, secure locations (such as safes), vehicles located on or in the

10

premises, and any persons located within said property or within the residence/location

11

described below.

12

For vehicles to be searched, this includes all areas of the vehicle, all

13

compartments, and all containers within that vehicle, whether locked or not.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT A
Page - 1
USAO 2021R001979

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## Residence

**Target Location 1 (TL1): 8363 Holly Lane, Maple Falls, Washington:**

8363 Holly Lane, Maple Falls, Washington is a single wide mobile home that is gray in color with white trim.  Target Location 1 has a covered landing for the front door which is on the south side of the residence.  No numbers are visible on the exterior of the residence.



ATTACHMENT A
Page - 2
USAO 2021R001979

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Vehicle**

**Target Vehicle 8: maroon Nissan Murano bearing temporary registration A5737940**:

According to The Washington Department of Licensing, this temporary registration is for a 2006 Nissan Murano, registered to Alfred Luna at 20331 Sanchez Lance, Burlington, Washington and listed as possibly stolen.  **Target Vehicle 8** is currently in the custody of the Whatcom County Sheriff's Department and secured in a Whatcom County Sherriff's Office facility.

ATTACHMENT A
Page - 3
USAO 2021R001979

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**(ITEMS TO BE SEARCHED AND SEIZED)**

This warrant authorizes the government to search for the following evidence, fruits, and/or instrumentalities of Distribution and/or Possession of Controlled Substances with Intent to Distribute in violation of 21 U.S.C. § 841(a)(1), and Conspiracy to Distribute Controlled Substances in violation of Title 21, United States Code, Section 846:

1.      Controlled Substances and controlled substance analogues.

2.      Drug Paraphernalia and Instruments of Drug Trafficking: Items used, or to be used, to store, process, package, use, and/or distribute controlled substances; plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances.

3.      Drug Transaction Records:  Documents such as ledgers, receipts, and notes relating to the acquisition, transportation, and distribution of controlled substances, however stored, including in digital devices.

4.      Customer and Supplier Information:  Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, and maps or directions.

5.      Cash and Financial Records:  Currency and financial records, such as bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, and vehicle documents; records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, and cashier's checks.

6.      Photographs/Video:  Photographs, video tapes, digital cameras, surveillance cameras, and associated hardware/storage devices depicting property occupants, friends and relatives of the property occupants, or suspected buyers or sellers of controlled substances, controlled substances or other contraband, weapons, and assets derived from the distribution of controlled substances.

7.      Weapons, including firearms, magazines, ammunition, and body armor.

8.      Codes:  Evidence of codes used in the distribution of controlled substances, such as passwords, code books, cypher or decryption keys.

9.      Property Records:  Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership, rental, income, expenses, or control of the Target Residence, and similar records of other property owned or rented.

10.      Indicia of occupancy, residency, and/or ownership of assets such as utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, and mortgage statements.

11.      Evidence of storage unit rental or access such as rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, and passwords.

12.      Evidence of Personal Property Ownership:  Registration information, ownership documents, or other evidence of ownership of personal property such as vehicles, vessels, boats, airplanes, jet skis, all-terrain vehicles, RVs, and jewelry; evidence of international or domestic travel, hotel stays, and other evidence of unexplained wealth.

13.      Individual and business financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:

a.      Employment records:  paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, dividends, stock certificates, and compensation to officers.

b.      Savings accounts:  statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.

c.      Checking accounts:  statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.

d.      Loan Accounts:  financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.

e.      Collection account statements and other-related records.

f.      Certificates of deposit:  applications, purchase documents, and statements of accounts.

g.      Credit card accounts:  credit cards, monthly statements, and receipts of use.

h.      Receipts and records related to gambling wins and losses, or any other contest winnings.

ATTACHMENT B
Page 2 of 4
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

i.      Insurance:  policies, statements, bills, and claim-related documents.

j.      Financial records:  profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made, both business and personal, receipts showing charitable contributions, and income and expense ledgers.

14.    All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

15.    All Western Union and/or Money Gram documents and other financial documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash, including applications, payment records, money orders, and frequent customer cards.

16.    Negotiable instruments, jewelry, precious metals, and financial instruments.

17.    Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency.

18.    Correspondence, papers, records, and any other items showing employment or lack of employment.

19.    Phone books, address books, any papers or documents reflecting names, addresses, telephone numbers, pager numbers, cellular telephone numbers, facsimile, and/or telex numbers, telephone records and bills relating to co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists; telephone answering devices that record telephone conversations and the tapes therein for messages left for or by co-conspirators for the delivery or purchase of controlled substances or laundering of drug proceeds.

20.    Safes and locked storage containers, and the contents thereof which are otherwise described in this document.

21.    Tools that may be used to open hidden compartments in vehicles, such as paint, bonding agents, magnets, or other items that may be used to open/close said compartments.

ATTACHMENT B
Page 3 of 4
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2          22.     Digital computing devices, *e.g.*, desktop and laptop computers and table
devices; digital storage devices, *e.g.,* external hard drives and USB thumb drives, and;
3     optical and magnetic storage media, *e.g.,* Blue Ray discs, DVDs and CDs.

4          23.     Pill press machine, encapsulating machine, and other tools or equipment
5     used to manufacture pills

6          24.     Cell Phones and other digital communication devices for evidence, fruits,
7     and/or instrumentalities of the above-referenced crimes, specifically:

8               a.     Assigned number and identifying telephone serial number (ESN,
9     MIN, IMSI, or IMEI);

10              b.     Stored list of recent received, sent, or missed calls;

11              c.     Stored contact information;

12              d.     Stored photographs and videos of narcotics, currency, financial
13    records (such as deposit slips and other bank records), RVs and other vehicles, firearms
or other weapons, evidence of the aforementioned crimes of investigation, and/or that
14    may show the user of the phone and/or coconspirators, including any embedded GPS
15    data associated with these photographs; and

16              e.     Stored text messages that are evidence of the above-listed federal
17    crimes or that may identify the user of the seized phones and/or coconspirators,
18    including messages sent via messaging apps, including Wickr, Signal, WhatsApp, and
Telegram, or other similar messaging services where the data is stored on the telephone

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B
Page 4 of 4
USAO 2021R01079

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970